IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELANI GRETZER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-v-<br><br>STATE OF OKLAHOMA *ex rel.* BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA**,**<br><br>Defendant. | Civil Case No.   CIV-19-490-PRW |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, individually, and on behalf of all others similarly situated, upon personal knowledge and upon information and belief as to all other matters, and for her Complaint against Defendant, STATE OF OKLAHOMA *ex rel.* BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA (hereafter "University of Oklahoma") alleges as follows:

## NATURE OF CLAIMS

1. Plaintiff brings this action individually, and on behalf of all similarly situated persons, who enrolled as students in the University of Oklahoma undergraduate degree programs between 1999 and the present.

2. Plaintiff alleges breach of contract, unjust enrichment and seeks compensatory, consequential, punitive damages, costs and reasonable attorney's fees for the University of Oklahoma's deceptive and unfair business practices, as herein alleged.

1

## JURISDICTION AND VENUE

3. The provisions of the Class Action Fairness Act ("CAFA"), 18 U.S.C. § 1332(d) explicitly provide for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

4. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000.00, in the aggregate, exclusive of interests and costs, as required by 28 U.S.C. § 1332(d)(2)(5).

5. Plaintiff is a Citizen and resident of Texas. the University of Oklahoma is a Citizen of Oklahoma. Members of the Class reside in all 50 U.S. States and over 100 countries and their citizenship are diverse from that of the University of Oklahoma.

6. Diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(5)(B).

7. The total approximate number of members of the proposed Plaintiff Class is at least 350,000 persons.

8. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

9. Venue is proper in the United States District Court for the Western District of Oklahoma under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district and Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

10.     Plaintiff, ELANI GRETZER is a citizen and resident of Houston, Texas 77071.

11.     State of Oklahoma *ex rel.* Board of Regents of the University of Oklahoma is a constitutional state entity of the State of Oklahoma and created according to the Oklahoma state constitution, having its principal place of business at 660 Parrington Oval, Room 321, Norman, Oklahoma, 73019-0390.  The Board of Regents oversees all relevant aspects of management and operation of the University of Oklahoma.

## STATEMENT OF MATERIAL FACTS

12.     the University of Oklahoma is a public research university in Norman, Oklahoma, which was founded in 1890.     In Fall 2018, the University had 31,702 students enrolled, most at its main campus in Norman. Employing nearly 3,000 faculty members, the school offers 152 baccalaureate programs, 160 master's programs, and 75 doctorate programs.

13.     In 2018, the University of Oklahoma had a total undergraduate enrollment of 22,819. It utilizes a semester-based academic calendar. Its in-state tuition and fees are $9,062 (2018-19); out-of-state tuition and fees are $24,443 (2018-19).

14.     Plaintiff enrolled in the University of Oklahoma Price College of Business ["PRICE"] undergraduate program, in the Spring 2016 semester.

15.     PRICE was ranked No. 45 by U.S. News & World Report for best undergraduate programs among public universities.

16.     The U.S. News ranking of PRICE was a material factor considered in Plaintiff's decision to enroll at the University of Oklahoma.

17. the University of Oklahoma failed to disclose to Plaintiff or any members of the Class, that its six -year graduation rate was 66 percent.

18. the University of Oklahoma did not adequately disclose to Plaintiff or any members of the Class, the total direct cost, expected median student loan debt, cohort default rate, program completion rate, median earnings and job placement rate.

19. Plaintiff transferred from the University of Oklahoma to the University of Houston after the Fall 2017 semester. Plaintiff completed 46 credits and earned a cumulative grade point average of 3.53 at the University of Oklahoma.

20. Plaintiff was required to take private student loans in the approximate amount of $18K, to finance her education at the University of Oklahoma.

21. the University of Oklahoma failed to disclose to Plaintiff or any members of the Class, issues surrounding transferability of completed credit hours earned at the University of Oklahoma, by transferee universities and colleges.

22. The University of Houston did not accept and credit Plaintiff for all courses she successfully completed at the University of Oklahoma.

23. There are many big names in the educational rankings industry, including Bloomberg Businessweek, U.S. News & World Report ("U.S. News"), Financial Times, Forbes, Princeton Review, and The Economist.

24. Among the most respected of them is the U.S. News' Best Colleges Ranking.

25. U.S. News publishes annual rankings for more than 11,500 schools and hundreds of individual programs as part of the Best Colleges rankings. To produce the rankings, U.S. News collects tens of thousands of data points from the schools themselves and other

sources, including the U.S. Department of Education, state and local governments and higher education associations.

26. Hard objective data alone determines each school's rank. U.S. News does not tour residence halls, chat with recruiters or conduct unscientific student polls for use in their computations. U.S. News relies on schools to accurately report their data.

27. The rankings are based largely on data provided by the universities, such as graduation rates, class sizes and standardized test scores of students. Alumni giving rates make up 5% of the rankings formula because "giving measures student satisfaction and post-graduate engagement," U.S. News writes in its methodology.

28. In 2018, for the first time in history, the University of Oklahoma was ranked among the top 100 colleges and universities in the nation, public or private, according to U.S. News. In its 2018 Best Colleges rankings, the University of Oklahoma was ranked among the best national universities as No. 97 overall – up from No. 111 in 2017 – and was ranked No. 41 among public institutions.

29. "This recognition marks a truly historic moment for the university," said the University of Oklahoma President David L. Boren. "The hard work and dedication of all members of the University of Oklahoma family have made this achievement possible. It confirms the high quality of education and standard of excellence that have become synonymous with the University of Oklahoma."

30. In 2018, the University of Oklahoma told U.S. News that it had inflated its alumni giving data since 1999, which affects its placement in the National Universities, Best Value

Schools, Top Public Schools, Best Colleges for Veterans and A-Plus Schools for B Students rankings and lists.

31.     For the 2019 Best Colleges rankings, the University of Oklahoma originally reported its two-year alumni giving rate at 14 percent. The school informed U.S. News the correct value is 9.7 percent. The average alumni giving rate has a weight of 5 percent in the Best Colleges ranking methodology.

32.     According to U.S. News, a very small proportion of the total number of schools that are ranked – typically less than 0.1 percent each year – inform U.S. News that they have misreported data that were used to calculate their school's ranking.

33.     In these rare cases, the misreporting by these schools resulted in their numerical ranks being higher than they otherwise would have been if the correct data had been used originally. Because of the discrepancies, U.S. News moved the schools to the "Unranked" category, meaning they do not receive numerical ranks.

34.     By reason of the University of Oklahoma's misreporting of data to educational ranking organizations, over the past 20 years, Plaintiff and members of the Class have sustained actual pecuniary injury and damages.

35.     The University of Oklahoma's' unranked status will last until the publication of the next edition of the rankings and until the University of Oklahoma confirms the accuracy of its next data submission in accordance with U.S. News' requirements.

36.     For the benefit of prospective students, the University of Oklahoma's unranked status has been noted on the school's profile page on usnews.com. In addition, U.S. News

has deleted the incorrect data from a school's profile page and in the U.S. News College Compass tool.

37. The scandal has raised grave concerns about the integrity of the University of Oklahoma's Administration and will have a long reaching negative impact on school's reputation, prestige and peer ratings.

38. The University of Oklahoma has engaged Jones Day, a global law firm, to conduct a comprehensive review of the school's ranking data and processes.

39. Jones Day has been previously hired by Tulane University and Temple University after U.S. News moved these schools to the unranked category for similar reporting errors in 2013 and 2018, respectively.

## CLASS ACTION ALLEGATIONS

40. This action is brought and may be properly maintained as a Class action pursuant to The Class Action Fairness Act, 28 U.S.C. § 1332.

41. This action has been brought and may properly be maintained as a class action against the University of Oklahoma pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure, because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

42. Plaintiff brings this action individually and on behalf of all others similarly situated, and seeks certification of a Class, defined as:

> **"All individuals who enrolled as students in the University of Oklahoma undergraduate degree programs between 1999 and the present."**

43. The following are excluded from the Class: The University of Oklahoma, by its affiliates, employees, officers and directors; heirs, successors and their assigns of any such person or entity, together with any immediate family member of any officers, directors, employee of said persons and/or entities. persons or entities that distribute or sell the University of Oklahoma products or programs, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

44. The proposed Class Period is the time beginning in 1999 and extending to the date of prospective entry of Judgment for the Class.

45. Plaintiff does not know the exact size of the class, but it is reasonably estimated that the Class is composed of at least 350,000 persons.

46. While the identities of Class members are unknown at this time, this information can be readily ascertained through appropriate discovery of the records maintained by the University of Oklahoma.

47. This action is properly brought as a class action because the proposed Class is so numerous and geographically dispersed throughout the United States that the joinder of all Class Members is impracticable.

48. This action is properly brought as a class action because the disposition of Plaintiff's and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

49.     This action is properly brought as a class action because the proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same fashion.

50.     This action is properly brought as a class action because there are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members.

51.     Such common questions of law and fact include but are not limited to:

   (i)     Whether the University of Oklahoma breached its educational contract with Plaintiff and members of the Class;

   (ii)    Whether the University of Oklahoma was unjustly enriched by its wrongful acts and conduct;

   (iii)   Whether Plaintiff and Class Members have been harmed and the proper measure of relief;

   (iv)    Whether Plaintiff and Class Members are entitled to an award of attorneys' fees and expenses; and

   (v)     Whether, Plaintiff and Class Members are entitled to equitable relief, and if so, the nature of such relief.

52.     Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff and Class Members have been injured by the same wrongful practices of the University of Oklahoma. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

53. Plaintiff will fairly and adequately protect the interests of the Class in that she has no interests antagonistic to those of the other Class Members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation as counsel.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

   (i) Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

   (ii) This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured;

   (iii) Without a class action, Class Members will continue to suffer damages, and the University of Oklahoma's violations of law will proceed without remedy while Defendant continues to reap and retain the proceeds of its wrongful conduct; and

   (iv) Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation which would preclude class certification.

55. The University of Oklahoma, by its agents, servants and employees, has access to address and contact information for the Class Members, which may be used for the purpose of providing notice of the class action.

56. Plaintiff seeks damages and equitable relief on behalf of the Class on grounds generally applicable to the entire proposed Class.

57. A Class action is a superior and cost-effective method for the fair and efficient adjudication of the present controversy and there would accrue enormous savings to both

the Courts and the Class in litigating the common issues on a class wide, instead of on a repetitive individual basis.

58. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would (a) establish incompatible standards of conduct of Defendant in this action and (b) create the risk that adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

## FIRST COUNT
### (Individual and Class Breach of Contract)

59. Plaintiff re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs above, as if fully set forth herein.

60. The law recognizes that there is an educational contractual relationship between student and college, university or trade school.

61. The University of Oklahoma is in the business of marketing and delivering educational services and degrees to the general public.

62. Plaintiff and members of the Class, as students, are consumers of educational services.

63. Plaintiff accepted the University of Oklahoma's offer to provide a curriculum, course materials and teaching instruction leading to a Baccalaureate Degree and entered

into an agreement to attend the University of Oklahoma's Price College of Business in exchange for the payment of agreed upon tuition and fees.

64. The University of Oklahoma agreed to provide Plaintiff with the necessary course work, instruction and training, in a specified time frame, whereby Plaintiff would be eligible to earn a bachelor's degree, upon her successful completion of required courses.

65. The subject contract imposed upon each party a duty of good faith and fair dealing in its performance and its enforcement, by embracing a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

66. Plaintiff and members of the Class performed their obligations under the contract and complied with their duty of good faith and fair dealing.

67. The University of Oklahoma had a duty of good faith and fair dealing not to take opportunistic advantage of the Plaintiff and members of the Class in a way that could not have been contemplated at the time of entering into the contract.

68. The University of Oklahoma breached this duty of good faith and fair dealing not to take opportunistic advantage of the Plaintiff and members of the Class.

69. The University of Oklahoma had a duty of good faith and fair dealing to act in accordance with the agreed common purpose and consistent with the justified expectations of the other party [Plaintiff and members of the Class].

70. The University of Oklahoma breached this duty of good faith and fair dealing to act in accordance with the agreed common purpose and consistent with the justified expectations of Plaintiff and members of the Class.

71.	The University of Oklahoma breached its educational agreement with Plaintiff and members of the Class by misreporting data to educational ranking organizations that were used to calculate the Best U, S. colleges.

72.	The University of Oklahoma represented that its undergraduate degree programs were of a particular standard, quality or grade, under circumstances in which it knew that such representations and reporting were not true at the time made to U.S. Best College ranking organizations.

73.	At all relevant times, the University of Oklahoma knew that its rankings by U.S. News and other educational ranking organizations were false and based upon lies and fabricated data provided by the University of Oklahoma.

74.	The University of Oklahoma breached its educational agreement with Plaintiff and members of the Class by representing to U.S. News and other educational ranking services that its undergraduate degree programs possessed certain characteristics, qualifications, requirements, benefits, and levels of attainment that were known not to actually exist at the time reported.

75.	The University of Oklahoma's unfair competition and deceptive practices, as described above, actually deceived or had the tendency to deceive a substantial segment of its student body, including Plaintiff and members of the Class.

76.	Plaintiff and members of the Class reasonably relied upon the fact that the University of Oklahoma would truthfully and accurately submit information and critical data to U.S. News and other organizations that ranked the best colleges in the U.S.A.

77. Plaintiff and members of the Class had no means of knowing or learning that the University of Oklahoma was engaged in misreporting data to educational ranking organizations that were used to calculate the ranking of the best colleges in the U.S.A.

78. If Plaintiff and/or members of the Class had knowledge of the University of Oklahoma's misreporting of data and deceptive practices described herein, they would not have applied for admission to the University of Oklahoma undergraduate degree programs.

79. If Plaintiff and/or members of the Class had knowledge of the University of Oklahoma's misreporting of data and deceptive practices for a period of 20 years, they would not have agreed to pay for tuition, fees and costs based, in material part, upon the University of Oklahoma being ranked by U.S. News as a Best College.

80. The University of Oklahoma's above described breaches of the educational agreement have raised grave concerns about the value and legitimacy of an the University of Oklahoma degree.

81. The University of Oklahoma's above described breaches of the educational agreement have raised grave concerns about the integrity of the University of Oklahoma's Administration and the long-range impact on school's reputation, prestige and peer ratings.

82. Plaintiff and members of the Class relied upon the apparent legitimacy of the University of Oklahoma's undergraduate degree programs, to their pecuniary detriment and irreparable damage to their educational pedigree.

83 The University of Oklahoma's wrongful actions and conduct, as described herein were immoral, unethical, and unscrupulous.

84. The University of Oklahoma's wrongful actions and conduct, as described herein, have directly caused Plaintiff and members of the Class to have suffered ascertainable loss.

85. By reason of the University of Oklahoma's above described breaches of the educational agreement, Plaintiff and members of the class have sustained damages for loss of the benefit of the bargain, equal to what Plaintiffs would have received, if the representations underlying the University of Oklahoma's rankings had been true.

86. By reason of the University of Oklahoma's above described breaches of the educational agreement, Plaintiff and members of the class have sustained out of pocket damages for the incremental difference between the amount of tuition and fees the University of Oklahoma could have charged, if not for its Best College rankings, and the tuition and fees it actually charged to Plaintiff and members of the Class.

87. By reason of above described breaches of the educational agreement, Plaintiff and members of the class have sustained consequential damages in the nature of application fees, transaction fees and interest charges in connection with the student loans.

88. By reason of the University of Oklahoma's above described breaches of the educational agreement, Plaintiff and members of the class have sustained consequential damages in the nature of the costs incurred for course related books and online subscriptions.

89. By reason of the University of Oklahoma's above described breaches of the educational agreement, Plaintiff and members of the class have sustained consequential damages in the nature of expenses incurred for airfare, transportation, room and board, in connection with undergraduate enrollment at the University of Oklahoma.

90. As a proximate result of the above described breaches of the educational agreement, the University of Oklahoma is liable to Plaintiff and Class members for reasonable attorney's fees and the costs of this litigation.

## SECOND COUNT
### (Individual and Class Unjust Enrichment)

91. Plaintiff incorporates by reference, each of the allegations contained in the preceding paragraphs above, as if fully set forth herein.

92. At all relevant times, the University of Oklahoma knew that the misreporting of critical data to U.S News and other ranking organizations was necessary for it to improve its Best College ranking.

93. The University of Oklahoma knew that the higher its ranking from U.S. News and other educational ranking organizations, the greater its leverage to enable the school to increase enrollment in its undergraduate programs.

94. The University of Oklahoma knew that the higher its ranking from U.S. News and other educational ranking organizations, the greater its leverage to enable the school to increase tuition rates and fees for its undergraduate degree programs.

95. The University of Oklahoma knew that its failure to progressively improve its Best Colleges ranking from U.S. News and other educational ranking organizations, was likely to make a difference in the purchasing decisions of prospective applicants to the University of Oklahoma's undergraduate degree programs.

96. The University of Oklahoma's actions and conduct, as described herein was immoral, unethical, and unscrupulous.

97.  As a result of the foregoing, the University of Oklahoma was enriched, at the expense of Plaintiff and Class Members and accordingly, it is against equity and good conscience to permit the University of Oklahoma to retain such enrichment.

98.  The University of Oklahoma is required to make restitution to Plaintiff and members of the Class.

99.  It would be inequitable and unjust for the University of Oklahoma to retain the benefits without payment of value to Plaintiff and members of the Class.

100.  By reason of the foregoing, Plaintiff and members of the Class have sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment as follows:

(a)  Certifying this case as a Class Action, with Plaintiff as Class representative and her attorneys as Class counsel;

(b)  Awarding Judgment to Plaintiff and members of the Class for all available monetary damages and other relief under the FIRST COUNT asserted;

(c)  Awarding Judgment to Plaintiffs and members of the Class for all available monetary damages and other relief under the SECOND COUNT asserted;

(d)  Awarding Plaintiff and members of the Class their costs and disbursements, including reasonable attorney's fees;

(e)  Awarding Plaintiff and members of the Class pre-judgment and post-judgment interest;

(f)  Granting such other and further relief as may be deemed just and proper in the premises.

Dated: May 28, 2019

        Respectfully submitted,

/Nicole Snapp-Holloway
Jacob D. Diesselhorst, OBA #19446
Nicole Snapp-Holloway, OBA #18472
Maples, Nix & Diesselhorst, PLLC
15401 North May Avenue
Edmond, OK 73013
Tel: 800-539-0652
Facsimile: 405.413.5005
Jacob@mndlawfirm.com
Nicole@mndlawfirm.com


Steven Bennett Blau
Shelly A. Leonard
BLAU LEONARD LAW GROUP, LLC
23 Green Street, Suite 303
Huntington, NY 11743
631-458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com
(To be admitted Pro Hac Vice)


Jason T. Brown
BROWN LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
877-561-0000
jtb@jtblawgroup.com
(To be admitted Pro Hac Vice)